**Slip Op. 08-15**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| ROYAL THAI GOVERNMENT, SAHAVIRYA INDUSTRIES PUBLIC COMPANY LIMITED, <br><br>                 Plaintiffs, <br><br>                 v. <br><br> UNITED STATES, <br><br>                 Defendant, <br><br>                 and <br><br> UNITED STATES STEEL CORPORATION, <br>                 Defendant- Intervenor. | Before: Richard W. Goldberg <br>        Senior Judge <br><br> Consol. Court No. 02-00026 |

**OPINION**

[Commerce's remand results are sustained.]

                                                    Date:  January 31, 2008.

Vinson & Elkins, LLP (Kenneth J. Pierce, Robert E. DeFrancesco, and Victor S. Mroczka) for Plaintiffs the Royal Thai Government and Sahaviriya Steel Industries Public Company Limited.

Jeffrey S. Bucholtz, Acting Assistant Attorney General, David M. Cohen, Director, Commercial Litigation Branch, Civil Division, United States Department of Justice (Claudia Burke and David S. Silverbrand); Mykhaylo A. Gryzlov, International Attorney-Advisor, Office of the Chief Counsel for the Import Administration, United States Department of Commerce for Defendant United States.

Skadden Arps Slate Meagher & Flom LLP (John J. Mangan) for Defendant-Intervenor United States Steel Corporation.

**Goldberg, Senior Judge:**  This matter is before the Court following a court-ordered remand.  See Royal Thai Gov't v. United States, 31 CIT __, 502 F. Supp. 2d 1334 (2007).  In Royal Thai, the Court ordered Commerce to reconcile its inconsistent treatment of the Thai 10% "Normal" tariff rate.  For the reasons stated below, this Court sustains Commerce's remand determination.

## I.      BACKGROUND

The procedural history of this case is set forth at length in Royal Thai, familiarity with which is presumed.  Id.  Briefly, the relevant facts are as follows:  after Commerce determined that the Thai duty exemption programs provided a subsidy to the Thai steel sector, Commerce still had to calculate the amount of benefit these programs provided in order to impose the appropriate countervailing duties.  Initially, Commerce determined that a 1% "Reduced" tariff rate would have applied to imports of steel slab absent the duty exemption programs, and imposed countervailing duties based on this rate.  This Court remanded Commerce's initial determination because the agency utilized the 1% "Reduced" tariff rate as its benefit calculation benchmark without considering whether this rate was itself a countervailable subsidy.

On remand, Commerce found that it could not analyze the countervailability of the 1% "Reduced" tariff rate under its normal methodology because the agency lacked information regarding the tariff rate applicable to steel slab in its absence.  Adopting an

alternative methodology, Commerce found that the 1% "Reduced" tariff rate was specific to the steel sector and rejected this rate as its benefit calculation benchmark on this basis.  In deciding to apply its alternative methodology, Commerce found that the 10% "Normal" tariff rate was not an appropriate benchmark for analyzing the countervailability of the 1% "Reduced" tariff because this rate was inapplicable to imports of steel slab.  Despite this rejection, Commerce adopted the 10% "Normal" tariff rate as its benchmark for calculating the benefit accruing from the duty exemption programs. This disparate treatment of the 10% "Normal" tariff rate was unsupported and arbitrary.  Accordingly, this Court remanded the case again and instructed Commerce to make one of three findings regarding the 10% "Normal" tariff rate:  (1) that the 10% "Normal" tariff is a meaningful benchmark for benefit calculation; (2) that the 10% "Normal" tariff rate is not a meaningful benchmark for benefit calculation; or (3) that steel slab is distinct from other products because its 10% "Normal" tariff rate is a meaningful benchmark, but the 10% "Normal" rate for other products is not similarly meaningful.

In its remand determination, Commerce made the second of the three permitted findings.[1]  Utilizing its alternative

---

[1] This Court provided Commerce further instruction on the second permitted finding, explaining that

(footnote continued)

methodology, Commerce found the 1% "Reduced" tariff rate specific to the steel industry.  Despite this specificity finding, Commerce found that it could not establish the countervailability of the 1% "Reduced" tariff rate because it could not prove that the rate also provided a benefit or a financial contribution.  As a result, Commerce adopted the 1% "Reduced" tariff rate as its benefit calculation benchmark, and determined that the duty exemption programs yielded net subsidy rates of 0.58 and 0.07 percent.  The Royal Thai Government ("RTG") and Sahavirya Industries Public Company, Limited ("SSG") now challenge Commerce's rejection of the 10% "Normal" tariff rate.  United States Steel Corporation ("U.S. Steel") challenges Commerce's use of the 1% "Reduced" tariff rate as its benefit calculation benchmark.

## II.       JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1581(c).  This Court must sustain any determination, finding, or conclusion made by Commerce in its remand determination unless it is "unsupported by substantial evidence, or otherwise not

---

> If Commerce makes [this finding], then Commerce must prove the existence of a subsidy without reference to the "Normal" tariff rates.  If, under this second finding, it cannot prove the existence of a benefit, then it cannot prove that the "Reduced" rate is a countervailable subsidy, and it must use the 1% tariff rate as a benchmark to calculate the countervailable subsidy that SSI received through its import duty exemption programs."

Royal Thai, 31 CIT at __, 502 F. Supp. 2d at 1344.

in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i)(2000). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938). "As long as the agency's methodology and procedures are reasonable means of effectuating the statutory purpose, and there is substantial evidence in the record supporting the agency's conclusions, the court will not impose its own views as to the sufficiency of the agency's investigation or question the agency's methodology." Ceramica Regiomontana, S.A. v. United States, 10 CIT 399, 404-05, 636 F. Supp. 961, 966 (1986).

### III.     DISCUSSION

Commerce can impose countervailing duties on foreign products that are imported, sold, or likely to be sold in the United States, if a foreign government has directly or indirectly subsidized its manufacture, production, or export. See 19 U.S.C. § 1671(a); accord Allegheny Ludlum Corp. v. United States, 24 CIT 452, 112 F. Supp. 2d 1141 (2000). These duties are intended "to offset the unfair competitive advantage that foreign producers would otherwise enjoy from export subsidies paid by their governments." British Steel PLC v. United States, 20 CIT 663, 699, 929 F. Supp. 426, 445 (1996) (citing Zenith Radio Corp. v. United States, 437 U.S. 443, 456 (1978)). To achieve this goal, Commerce must attempt to approximate the amount of benefit provided by an

alleged subsidy.  Before it can make this calculation, Commerce must establish a benefit calculation benchmark, or more precisely, determine what tariff rate would have applied absent the alleged subsidy.  Once this benchmark is established, Commerce will have a reference point from which it can determine the amount of benefit that has been conferred.  However, Commerce must also determine that its proposed benchmark is not itself a countervailable subsidy.  AL Tech Specialty Steel Corp. v. United States, 29 CIT __,__, 366 F. Supp. 2d 1236, 1237 n.3 (2005).  To determine countervailability, Commerce normally conducts a specificity analysis because an alleged subsidy is only countervailable if specific to an industry or group of users.  Commerce's typical specificity methodology examines the relative benefits accruing from an alleged subsidy in order to determine its distribution.  However, to apply its relative benefit methodology, Commerce must be able to determine what tariff rate would have applied in the absence of the proposed benchmark.

### A. Commerce's Specificity Analysis

RTS and SSI argue that Commerce erred in rejecting the 10% "Normal" tariff rate and, in turn, its preferred methodology.  If Commerce could have relied on the 10% "Normal" tariff rate as an alternative tariff rate, it clearly could have applied its relative benefit methodology.  This Court, however, finds that Commerce's decision to reject this rate and apply alternative methodology is

supported by substantial evidence.  Generally, Commerce is granted broad discretion in its administration of the countervailing duty laws.  See Ceramica Regiomontana, S.A., 10 CIT at 404–405, 636 F. Supp. at 966.  However, Commerce is still required to "either conform itself to its prior decisions or explain the reasons for its departure."  Citrosuco Paulista, S.A. v. United States, 12 CIT 1196, 1206, 704 F. Supp. 1075, 1088 (1988).  Here, Commerce adequately explained its rationale for deviating from its past methodology.  Commerce first rejected the 10% "Normal" tariff rate because it found "[u]nder the Thai tariff system, the term 'Normal' rate is a misnomer, [as] Thai 'Normal' rates are not usually applied in assessing duties upon imports under the vast majority of the HTS categories. . . .'"  Results of Redetermination on Remand Pursuant to Royal Thai Government, et al. v. United States, Slip Op. 04-91 (Ct. Int'l Trade July 27, 2004) (May 4, 2007), at 18-19.  After rejecting the 10% "Normal" rate, Commerce found it necessary to adopt an alternative methodology because it lacked the tariff rate information required to conduct its standard analysis.  This Court finds Commerce's explanation a wholly reasonable basis for its deviation from past agency practice, and accordingly, Commerce's decision is supported by substantial evidence.

**B. Commerce's Use of the 1% "Reduced" Tariff Rate as a Benchmark**

U.S. Steel argues that Commerce's finding that the 1% "Reduced" tariff rate is specific required Commerce to automatically discard this rate as a benchmark.  However, the Court has repeatedly rejected U.S. Steel's argument noting "[t]here are multiple statutory criteria for establishing the existence of a countervailable subsidy.  The absence of any one of those criteria is sufficient to prove non-countervailability . . . ."  Royal Thai Gov't v. United States, 30 CIT at __, 441 F. Supp. 2d 1350 at 1366 n.16 (2006).  Within context of this action, this Court instructed Commerce that "under a finding of specificity alone, Commerce may not . . . discard the 1% reduced rate as a benchmark.  Commerce must prove that the 1% reduced rate is a countervailable subsidy and do so without reference to the rejected 'Normal' rates."  Royal Thai, 31 CIT at __, 502 F. Supp. 2d at 1343.  In following these instructions, Commerce did not err in refusing to reject the 1% "Reduced" tariff rate as its benefit calculation benchmark.

U.S. Steel also argues that Commerce erred in concluding that it could not establish the countervailability of the 1% "Reduced" tariff rate.  To establish that an alleged subsidy is countervailable, Commerce must prove the existence of three elements: (1) financial contribution; (2) benefit conferred; and

(3) specificity. 19 U.S.C. §§ 1677 (5)(A),(5)(D),(5)(E). In this action, Commerce concluded that it could not establish countervailability because it lacked information regarding applicable alternative tariff rates, and without this information it could not demonstrate that a benefit or financial contribution had accrued to the Thai steel sector. According to U.S. Steel, this conclusion was in error because evidence demonstrated a 5% "Alternative" tariff rate would have applied to steel slab in the absence of the 1% "Reduced" tariff rate. Commerce, however, specifically found the 5% "Alternative" tariff rate inapplicable. Commerce's remand determination explains that while Thai Ministry of Finance Notifications indicate that a 5% "Alternative" tariff rate has applied to steel slab imports in the past, the agency chose to avoid the "speculative nature of attempting 'to predict at a later point in time whether slab would have reverted back to a semi-finished product or would have still been categorized in the "Reduced" rate schedule as a primary product.'" <u>Results of Redetermination on Remand Pursuant to Royal Thai Government, et al. v. United States</u>, Slip Op. 07-119 (Ct. Int'l Trade Aug. 6, 2007) (Oct. 5, 2007), at 8—9 (<u>quoting</u> <u>Verification Report</u>, at 5.). Commerce's explanation makes clear that determining an alternative tariff rate for steel slab imports under the Thai tariff nomenclature is particularly complicated in light of the fact that both the rate and classification of products are subject to

frequent change.  In the end, Commerce concluded that it lacked sufficient information to establish any alternative tariff rate, and that it could not establish the countervailability of the 1% "Reduced" tariff rate.  Commerce's finding that the 1% "Reduced" tariff rate is an appropriate benefit calculation benchmark is supported by substantial evidence.

## IV.     CONCLUSION

In light of the foregoing, the Court sustains the Remand Determination because it is in accordance with law and supported by substantial evidence.  Judgment shall be entered accordingly.

_/s/ Richard W. Goldberg

**Richard W. Goldberg
Senior Judge**

**Date:        January 31, 2008
               New York, New York**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| ROYAL THAI GOVERNMENT, SAHAVIRYA INDUSTRIES PUBLIC COMPANY LIMITED, | |
| Plaintiffs, | Before: Richard W. Goldberg Senior Judge |
| v. | Consol. Court No. 02-00026 |
| UNITED STATES, | |
| Defendant, | |
| and | |
| UNITED STATES STEEL CORPORATION, | |
| Defendant-Intervenor. | |

**JUDGMENT**

Upon consideration of the Results of Redetermination on Remand Pursuant to Royal Thai, et al. v. United States, Slip. Op. 07-119 (Ct. Int'l Trade, August 6, 2007), and all comments filed in connection therewith; and upon consideration of all other papers had herein; and upon due deliberation, it is hereby

**ORDERED** that Commerce's Results of Redetermination on Remand are SUSTAINED; and it is further

**ORDERED** that Commerce's final affirmative countervailing duty determination in Certain Hot-Rolled

<u>Carbon Steel Flat Products from Thailand</u>, 66 Fed. Reg. 50410 (Dep't Commerce Oct. 3, 2001) is SUSTAINED.

**SO ORDERED.**

/s/ Richard W. Goldberg
**Richard W. Goldberg**
**Senior Judge**

**Dated:   January 31, 2008**
**         New York, New York**

## NOTICE OF ENTRY AND SERVICE

      This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

      Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

      or

      Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

      Tina Potuto Kimble
      Clerk of the Court

Date: _____    By: _____
                                                        Deputy Clerk